MARY E. MACDONALD *vs.* RICHARD G. MACDONALD.

Plymouth. November 5, 1987. — January 12, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Notice,* Timeliness. *Attachment.*

In a wife's action against her former husband for contempt alleging arrearages in alimony and support payments in which it appeared that an attachment of certain of the defendant's real estate was authorized, which was recorded the same day; that, the following day, the defendant sold the real estate; that the purchasers gave a mortgage on the property to a credit union, whose attorney failed to discover the plaintiff's attachment; and that, without filing a motion to intervene or a separate petition to dissolve the attachment the attorney moved in the contempt case to dissolve the attachment, the judge incorrectly dissolved the attachment under G. L. c. 223, §§ 106 and 108, where there was no evidence or finding that the amount of the arrearages was "not justly due" as required by the statute, nor any allegation or finding that the plaintiff's attachment was fraudulent or invalid within the meaning of the statute. [514-515]

COMPLAINT filed in the Plymouth Division of the Probate and Family Court Department on August 12, 1982.

A contempt proceeding commenced on September 21, 1983, was heard by *James R. Lawton,* J., and other motions were considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Willis A. Downs* for the plaintiff.

*Stephen J. Duggan,* for Crescent Credit Union, amicus curiae, submitted a brief.

LYNCH, J. The plaintiff filed a complaint for contempt in the Probate Court alleging the defendant's arrearages in alimony and support payments under an order of September 13, 1982, totalling $5,908.31. On September 26, 1983, a probate judge authorized an attachment of certain of the defend-

ant's real estate, which was recorded that day. The following day, September 27, 1983, the defendant sold the real estate.[1] The purchasers gave a mortgage on the property to the Crescent Credit Union (credit union). The credit union's attorney failed to discover the plaintiff's attachment. Upon learning of his error, the attorney filed a motion in the contempt case to dissolve the attachment. No motion to intervene was made, and no separate petition to dissolve the attachment was filed. The judge allowed the motion on the day it was filed without prior notice, although the plaintiff apparently was present and given an opportunity to be heard. The plaintiff then moved for reconsideration and stay pending appeal, but these motions were denied. The plaintiff thereupon appealed. A single justice of the Appeals Court allowed the credit union's motion to file an amicus brief, but did not allow the credit union to argue. Mass. R. A. P. 17, 365 Mass. 864 (1974). We took the case on our own motion.

We assume, without deciding, that the Massachusetts Rules of Domestic Relations Procedure govern the credit union's motion.[2] Under those rules, "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 3 days before the time specified for the hearing . . . ." Mass. R. Dom. Rel. P. 6 (c). No such prior notice was given; indeed, the plaintiff's only notice came on the day of the hearing itself.

Even if there had been adequate notice, we doubt whether the probate judge could properly dissolve the attachment under G. L. c. 223, §§ 106 and 108 (1986 ed.), on the grounds urged by the credit union. Those provisions permit dissolution of an attachment upon a finding that all or part of the amount demanded in the original action was "not justly due." The probate

---

[1] Richard MacDonald is not a party to this appeal.

[2] See Mass. R. Civ. P. 1, as amended, 385 Mass. 1213 (1982). We note, however, that even if the proper procedure for the credit union's motion is to be found in the rules of the Probate Court, the outcome of this case would remain unchanged, since the credit union failed to comply with the notice provisions of either set of rules. Compare Rule 6 of the Probate Court with Mass. R. Dom. Rel. 6 (c).

judge made no such finding nor does the record disclose that evidence was introduced to support such a finding.

Furthermore, decisions interpreting earlier statutes containing analogous provisions make clear that §§ 106 and 108 provide a remedy against attachments which are invalid or fraudulent.[3] *Williams* v. *East Wareham, Onset Bay, and Point Independence St. Ry.,* 171 Mass. 61 (1898) (execution creditor could proceed at law to try validity of attachment); *Deyo* v. *Jennison,* 10 Allen 410 (1865) (attachment procured by fraud); *Felton* v. *Wadsworth,* 7 Cush. 587 (1851) (fraudulent attachment); *Baird* v. *Williams,* 19 Pick. 381, 385-386 (1837) (invalid attachment due to invalidity of underlying obligation; petitioner must show that "debt was not justly due and owing"); *Adams* v. *Paige,* 7 Pick. 542 (1829) (collusion of attaching creditors); *Spear* v. *Hubbard,* 4 Pick. 143 (1826) (fraudulent attachment); *Hammatt* v. *Bassett,* 2 Pick. 564 (1824) (same). In the instant case, there was no allegation that the plaintiff's attachment was fraudulent or invalid within the meaning of the statute and in fact the judge made no finding to that effect.

We can understand the judge's concern that the defendant not be unjustly enriched by the unfortunate error of the credit union's attorney. However, the question of the attorney's error was one which the credit union had "no right to [raise] in this form of proceeding. It does not show that the debt was not justly due and owing, or that it was not then payable; and, therefore, they show no sufficient ground for vacating the attachment, on petition, by force of this statute." *Baird* v. *Williams, supra* at 385-386 (construing predecessor statute). Therefore, the order dissolving the attachment is vacated, and the attachment is to be effective on the date it was originally recorded.

*So ordered.*

---

[3] Excessive attachments are governed by G. L. c. 233, § 114 (1986 ed.), which requires, inter alia, that "Notice . . . shall be served upon each of the parties in accordance with the applicable rules of court." The credit union does not argue that the attachment could have been reduced by virtue of this provision; hence we do not consider the question here.